**BRYAN CAVE LLP**
Gregory D. Trimarche, California Bar No. 143686
1900 Main Street, Suite 700
Irvine, California 92614-7328
Telephone:   (949) 223-7000
Facsimile:   (949) 223-7100
gregory.trimarche@bryancave.com

**BRYAN CAVE LLP**
Stephanie A. Blazewicz (California SBN 240553)
2 Embarcadero Center, Suite 1410
San Francisco, California  94111
Telephone:   (415) 675-3400
Facsimile:   (415) 675-3434
stephanie.blazewicz@bryancave.com

Attorneys for Defendant and Cross-Complainant
BAY AREA CABLEVISION, INC.

FILED

2008 APR 17 P 1: 45

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

E-FILING

ADR

Feepaid

NP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BERNARD LOVE,

        Plaintiff,

        vs.

BAY AREA CABLEVISION, INC., a
California corporation; Does 1 through 50,
inclusive,

        Defendants.

C 08  02012  HRL

Case No.

**NOTICE OF REMOVAL OF ACTION
TO UNITED STATES DISTRICT
COURT UNDER 28 U.S.C. §§ 1331;
1441(B) (FEDERAL QUESTION)**

(Santa Clara County Superior Court
Case No. 108CV103157)

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    **PLEASE TAKE NOTICE THAT** Defendant BAY AREA CABLEVISION, INC.

("BAC") removes this action from the Superior Court for the State of California for the

Bryan Cave LLP
1900 Main Street, Suite 700
Irvine, California 92614-7328

ORIGINAL

1  County of Santa Clara to the United States District Court for the Northern District of

2  California, San Jose Division, based on federal question jurisdiction pursuant to 28 U.S.C.

3  §§ 1331 and 1441(b), and states in support as follows:

4       1.      On January 14, 2008, a lawsuit was filed in the Superior Court of the State of

5  California, County of Santa Clara *styled* <u>Bernard Love v. Bay Area Cablevision, Inc., and</u>

6  <u>Does 1 through 50</u>, Case No. 108-CV-103157.  The Complaint is attached as Exhibit "1."

7       2.      The Summons and Complaint were served on March 18, 2008.  The

8  Summons, Notice of Service of Process, and letter confirming the date of service are

9  attached as Exhibit "2."

10      3.      This Court has original jurisdiction over this lawsuit under 28 U.S.C. § 1331,

11  and the lawsuit may be removed to this Court pursuant to the provisions of 28 U.S.C. §

12  1441(b) because Plaintiff's claim is one that arises "under the Constitution, laws, or

13  treaties of the United States." 28 U.S.C. § 1331.

### BACKGROUND

15      4.      The gravemen of Plaintiff's Complaint is whether the Federal

16  Communications Commission ("FCC") must recognize Plaintiff as the sole holder of the

17  FCC license for Broadband Radio Service station WNTM-579 for the San Jose, California

18  area (the "License"). (<u>See</u> Complaint, at ¶ 20.)

19      5.      The License permits the holder thereof to operate certain radio frequencies

20  on an exclusive basis within a defined geographic area for the provision of wireless

21  telecommunications services.

22      6.      Plaintiff alleges that he successfully applied for the License through a lottery

23  held by the FCC in or around 1992.  (<u>Id</u>. at ¶ 4.)  In 1993, Plaintiff entered into an

24  agreement to allow Gulf American, Inc., to lease and use the radio frequencies authorized

25  by the License (the "Lease").  (<u>Id</u>. at ¶ 6.)

26      7.      The Lease was assigned to BAC on February 18, 1994.  (<u>Id</u>. at ¶¶ 7-9.)

27  According to the Complaint, the assignment to BAC occurred without Plaintiff's

28  knowledge and/or consent.  (<u>Id</u>. at ¶ 11.)

Bryan Cave LLP
1900 Main Street, Suite 700
Irvine, California 92614-7328

8.    In 1998, BAC became the holder of the License after the FCC granted its approval of the assignment of the License to BAC. The FCC has recognized BAC as the rightful holder of the License since that time. (Id. at ¶ 13.)

9.    Plaintiff asks for a declaratory judgment that Plaintiff is the rightful holder of the License and states that the FCC must honor that judgment. (Id. at ¶¶ 17-21.)

## REMOVAL JURISDICTION

10.    Whether or not the FCC must recognize Plaintiff as the rightful holder of the License necessarily involves a substantial question of federal law.

11.    Congress has asserted exclusive federal control over all interstate wire and radio communications systems through the establishment of the FCC and, as a result, is the sole authority for licensing radio frequencies and regulating the technical aspects of wireless communications under the under the Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 151.

12.    Congress has charged the FCC with "making available . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communications service," 47 U.S.C. 151 (2008), has declared it "the policy of the United States to encourage the provision of new technologies and services to the public," 47 U.S.C. 157(a), and has established procedures to ensure the "efficient and intensive use of the electromagnetic spectrum." 47 U.S.C. 309(j)(3)(D) (Supp. IV 2007).

13.    The FCC has utilized its special knowledge of and expertise in relevant wireless telecommunications systems to devise a complex, interdependent, and competitively neutral set of regulations and rules for the issuance and assignments of licenses to operate telecommunications systems using radio frequencies under the Communications Act. Accordingly, consideration of Plaintiff's claim requires interpretation of federal law. See, e.g., 47 U.S.C. 310(d) ("No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, . . . except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby");

Bryan Cave LLP
1900 Main Street, Suite 700
Irvine, California 92614-7328

NOTICE OF REMOVAL OF STATE ACTION

1  *Principles for Promoting the Efficient Use of Spectrum by encouraging the Development of*

2  *Secondary Markets,* 15 F.C.C. Rcd 24178 (2000) ("Our rules and policies pursuant to

3  Section 310(d) require that assignment or transfers of control of licenses be approved by

4  the Commission and that licensees maintain control over and responsibility for their

5  assigned spectrum, equipment and operations").

6       14.    Jurisdiction within the federal courts is particularly appropriate in areas

7  where there is a need for national uniformity. <u>See, e.g.,</u> <u>Beneficial Nat'l Bank v. Anderson,</u>

8  123 S. Ct. 2058, 2063-64 (2003); <u>Ormet Corp. v. Ohio Power Co.,</u> 98 F.3d 799, 805 (4th

9  Cir.1996) ("[W]here the resolution of a federal issue in a state-law cause of action could,

10  because of different approaches and inconsistency, undermine the stability and efficiency

11  of a federal statutory regime, the need for uniformity becomes a substantial federal

12  interest, justifying the exercise of jurisdiction by federal courts").

13       15.    Federal communications policy has long recognized the need for such

14  uniformity in the regulation of the operation and licensing of radio frequencies. Certainty

15  in the licensing, development and deployment of facilities using radio frequencies is

16  critically important in advancing the FCC's stated objective of "making available . . .

17  Nationwide radio communications service." This is particularly appropriate where the

18  issue involves a determination of the rightful holder of a FCC license that has not been

19  questioned for the past ten years.

20       16.    To permit state law resolution of Plaintiff's claim would immerse the

21  Superior Court for the County of Santa Clara in an area specifically reserved for the FCC's

22  expertise and policy judgments and could result in the promulgation of different and

23  possibly conflicting standards regarding the licensing of radio frequencies. Accordingly,

24  the adjudication of this lawsuit involves a substantial question of federal law and requires

25  the interpretation of federal law. <u>ARCO Environmental Remediation, L.L.C. v.</u>

26  <u>Department of Health & Envtl. Quality,</u> 213 F.3d 1108, 1114 (9th Cir. 2000). Therefore,

27  the lawsuit may be properly removed to this Court pursuant to 28 U.S.C. §§ 1331 and

28  1441.

Bryan Cave LLP
1900 Main Street, Suite 700
Irvine, California 92614-7328

Bryan Cave LLP
1900 Main Street, Suite 700
Irvine, California 92614-7328

1

### TIMELINESS OF REMOVAL

2    17.    BAC was served on March 18, 2008. This Notice of Removal is being filed

3 on April 17, 2008, and is timely under 28 U.S.C. § 1446(b).

4

### PROCEDURES FOR REMOVAL

5    18.    The Complaint and Summons attached hereto as Exhibits 1 and 2 constitute

6 all process, pleadings and orders in the action. 28 U.S.C. § 1446(a).

7    19.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being

8 served upon counsel for the Plaintiff and a copy is being filed with the Clerk of the

9 Superior Court for the County of Santa Clara.

10

### INTRADISTRICT ASSIGNMENT

11    20.    Pursuant to Local Rules 3-2(c) & (e), the San Jose Division of the Northern

12 District of California has jurisdiction over this Action, because this Action arises in the

13 county of Santa Clara and is being removed from the Superior Court for the County of

14 Santa Clara.

15

16 Dated: April 16, 2008

BRYAN CAVE LLP
Gregory D. Trimarche
Stephanie A. Blazewicz

17

18 By: _____

19    Stephanie A. Blazewicz
Attorneys for Defendant

20 BAY AREA CABLEVISION, INC.

21

22

23

24

25

26

27

28

SF01DOCS104.3

NOTICE OF REMOVAL OF STATE ACTION

RECEIVED

MAR 1 2 2008

SPRINT LAW DEPT

COPY

1 | Anthony E. Bell (SB# 133811)
Law Offices of Anthony E. Bell, Inc.
2 | 333 South Grand Ave., 25th Floor
Los Angeles, California 90071-1504
3 | (213) 892-6340
(213) 892-2240 (FAX)
4
5 | James F. Scherer *(pro hac vice application to be filed)*
Solomon Pearl Blum Heymann & Stich, LLP
6 | 1801 Broadway, Suite 500
Denver, CO 80202
7 | (303) 832-6686
(303) 832-6653 (FAX)
8
9 | Attorneys for Plaintiff

10 |          SUPERIOR COURT OF THE STATE OF CALIFORNIA
11 |                 FOR COUNTY OF SANTA CLARA
12 |
13 |
14 | BERNARD LOVE,                    ) Case No. **1 08 CV 103 157**
15 |         Plaintiff,               ) COMPLAINT FOR DECLARATORY
                                       ) RELIEF AND ACCOUNTING
16 | vs.                             )
17 | BAY AREA CABLEVISION,           )
INC., a California corporation;     )
18 | Does 1 through 50, inclusive,   )
19 |         Defendants.             )
20 |
21 |
22 |       Plaintiff Bernard Love, for his Complaint against defendants, and each of
23 | them, alleges as follows:
24 |
25 |       Plaintiff is an adult residing in the City and County of Denver, State of
26 | Colorado.
27 | 2.    Plaintiff is informed and believes, and thereupon alleges, that defendant
28 |       BAY AREA CALBEVISION, INC. ("BACI") is a corporation organized

-1-



1    under the laws of California doing business in the County of Santa Clara.

2

3.    Plaintiff is unaware of the true names and/or capacities of defendants

3

4    Does 1 through 50, and therefore sues said defendants by fictitious names.

5

6    Plaintiff is informed and believes, and thereupon alleges, that defendants

7    Does 1 through 50 are liable in some manner to Plaintiff for the injuries

8    and damages alleged herein.

9

4.    In or about 1992, Plaintiff applied for the issuance of a federal license

10

11    for use of a regulated electromagnetic spectrum through a lottery

12

13    conducted by the Federal Communications Commission ("FCC").  Plaintiff

14    was a successful lottery applicant, and in or about December 1992, the

15    FCC issued plaintiff a license for a multi-channel multipoint distribution

16

17    service ("MMDS") operating on the H2 Channel, frequency 2265 MHz,

18    call sign  WNTM-579, serving the Los Gatos, California area (the

19

20    "License").

21    5.    Plaintiff retained the services of Kingswood Associates, Inc., a California

22    firm, to assist him in marketing the License.  On January 22, 1993, with

23

24    the assistance of Kingswood Associates, Plaintiff executed a Channel

25    Lease Agreement, under the terms of which Plaintiff leased the License to

26    Gulf American, Inc., a Delaware corporation.  The Channel Lease

27    Agreement provided for a renewable five-year lease term.  A copy of the

28

Channel Lease Agreement is attached hereto as Exhibit 1.

COMPLAINT          -2-

6.    On information and belief, on or about February 18, 1994, the Channel Lease Agreement was assigned by Gulf American, Inc. to BACI, Bay Area Cablevision, Inc.  Plaintiff did not participate in or approve this assignment of the Channel Lease Agreement, and was not aware that said assignment had occurred.

7.    In or about May 1996, BACI executed a document entitled Agreement for the Assignment of MMDS License ("Assignment Agreement"), under the terms of which purport to assign Plaintiff's interest in the License to BACI, in return for payment of the sum of $60,000.00. A copy of the Assignment Agreement is attached hereto as Exhibit 2.

8.    The Assignment Agreement was negotiated and executed without Plaintiff's participation, knowledge or assent.  A person or persons not known caused to be affixed to the Assignment Agreement a forged and fraudulent signature purporting to be that of Plaintiff.

9.    Plaintiff is informed and believes, and thereupon alleges, that unbeknownst to him, the payment specified in the Assignment Agreement was paid by BACI by means of a check issued by BACI, made payable to Plaintiff, dated May 23, 1996; but delivered to Kingswood Associates. Said check was endorsed by Kingswood Associates, Inc., but not by Plaintiff, and deposited into Kingswood Associates' bank account .

10.    Plaintiff was never advised of the execution or existence of the

COMPLAINT                                              -3-

1     Assignment Agreement, of the fact of the purported assignment of the

2     License, or of the payment made by BACI pursuant to the Assignment

3     Agreement, either at the time of the purported transaction or afterwards.

4     On information and belief, BACI and Kingswood Associates, Inc.

5

6     intentionally concealed the May 1996 transaction from the plaintiff.

7

8 11.   Pursuant to the May 1996 Assignment Agreement, BACI submitted an

9       application for assignment of the License, together with the Assignment

10

11       Agreement and other supporting documentation, to the FCC, as required

12       by applicable FCC rule. The assignment application which was submitted

13

14       to the FCC contained a forged and fraudulent signature which purported to

15       be, but was not, that of Plaintiff. The FCC ultimately granted its approval

16

17       to assignment of the license to BACI, based upon the documentation

18       submitted by BACI, on or about July 31, 1998.

19 12.   On information and belief, Kingswood Associates, Inc. and BACI

20

21       intentionally concealed the application for assignment of the License from

22       the plaintiff to BACI. Plaintiff was not aware of the application and

23

24       approval by the FCC of the transfer of the License to BACI, either at the

25       time said application and approval occurred, or afterward, until he

26

27       discovered the fraudulent assignment as set forth below.

28 13.   BACI is the current holder of the License, pursuant to the FCC's July 31,

      1998 approval of BACI's application for assignment.

COMPLAINT

-4-

14.   Between 1998 and 2006, Plaintiff took measures to ascertain the status of the payments due under the Channel Lease Agreement executed in January 1993. The measures taken by the plaintiff included repeated attempts to contact Kingswood Associates, Inc. and its principals, and inquiries of the FCC. Despite these efforts, the plaintiff received no information regarding the existence of the purported assignment of the License to BACI.

15.   In early 2006, having failed at all other attempts to obtain information regarding the status of the License, Plaintiff contacted the office of U.S. Rep. Diana DeGette (D. Colo.), seeking information regarding the status of the License. In response to this request, in or about July 2006, Plaintiff was provided with documentation by Rep. DeGette's office relating to the transfer of the License. The documentation provided included the May 1996 Assignment Agreement and the transfer applications submitted by BACI to the FCC, together with documentation regarding the FCC's approval of the license transfer.

16.   Prior to receipt of the documentation referenced above in or about July 2006, the plaintiff had no knowledge or notice of the purported transfer of the License to BACI.

//

//

COMPLAINT                                                    -5-

FIRST CAUSE OF ACTION

(Declaratory Relief)

17.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 16

above, above as if fully set forth herein.

18.    Plaintiff contends that the Assignment Agreement referenced herein is void

and invalid.  The requirements for the formation of a valid contract do not

exist, as the signature on the Assignment Agreement purporting to be that of

the plaintiff as a party to the agreement is a forgery, and as the plaintiff was

not aware of and did not consent to the transaction set forth in the

Assignment Agreement, either at the time it was purportedly executed or

afterwards.

19.    Plaintiff further contends that the transaction reflected in the Assignment

Agreement, i.e., the transfer of the License from the plaintiff to BACI, is

void, because, among other things, Plaintiff was not aware of and did not

consent to the transfer of the License, either under the terms set forth in

the Assignment Agreement, or under any other terms.

20.    Plaintiff is informed and believes, and thereupon alleges, that BACI

disputes Plaintiff's contentions and contends that the Assignment

Agreement is not void.  A judicial declaration is necessary and appropriate

to determine the true ownership of the License.  Plaintiff is informed and

believes, and thereupon alleges, that the FCC will honor a Judgment or Order from a Court of competent jurisdiction which determines ownership of the License.

21. Plaintiff is a person interested under the Assignment Agreement, as the purported agreement operated to divest him of his rights to the License, and as the Agreement was utilized by BACI to effect a fraudulent transfer of the License by the FCC from the plaintiff to BACI. The plaintiff therefore possesses standing to seek declaratory relief as to the Assignment Agreement and the transfer of his right to the License effected by said agreement, as provided by C.C.P. §1060.

## SECOND CAUSE OF ACTION

### (ACCOUNTING)

22. Plaintiff incorporates the allegations set forth in paragraphs 1 through 21 above, above as if fully set forth herein.

23. Plaintiff is informed and believes, and thereupon alleges, that BACI has realized profits from commercial use and exploitation of the License, which should have rightfully gone to Plaintiff as the true owner of the License. Plaintiff is therefore entitled to an accounting of the profits gained as a result of the License.

//

//

COMPLAINT                                                    -7-

1    WHEREFORE, Plaintiff prays for Judgment:

2        1. For declaratory relief as provided by C.C.P. §1060, declaring the rights
3    and responsibilities of the parties with respect to the May 1996 Agreement for the
4    Assignment of MMDS License, described herein, finding and adjudging that said
5    agreement is void and invalid, and setting aside the transfer of Plaintiff's right to
6    the FCC broadband license described herein to BACI which is effected by the
7    Agreement, and declaring Plaintiff to be the true owner of the License;
8
9        2. For an accounting of profits obtained by defendants as a result of their
10   exploitation of the fraudulently obtained License, and disgorgement thereof to
11   Plaintiff, in an amount according to proof at trial, but which is estimated to be in
12   excess of the jurisdictional minimum of this Court;

13       3. For costs of suit; and

14       4. For such other and further relief as is just and proper,

15

16   DATED: January _10_, 2008.

17

18                          Law Offices of Anthony E. Bell, Inc.
                            Solomon Pearl Blum Heymann & Stich, LLP
19

20                          By: _____
21                               Anthony E. Bell
22                               Attorneys for Plaintiff

23

24

25

26

27

28

                            COMPLAINT                                -8-

# CHANNEL LEASE AGREEMENT

THIS AGREEMENT ("Agreement"), made this 22nd day of January, 1993 by and between BERNARD LOVE (BL) having his principal place of business at 14962 E. 45th Avenue, Denver, CO 80239 and GULF AMERICAN, INC. (Gulf) a Delaware company having its principal place of business at 821 Malcolm Road, Burlingame, CA 94010.

## RECITALS

WHEREAS, BL has been issued a license ("License") by the Federal Communications Commission ("FCC") enabling BL to construct and operate a facility ("Facility") in the Private Operational Fixed Microwave Service ("OFS") operating on the H2 Channel (Frequency 2665 MHz) (the "Channel"), to serve the Los Gatos, California, and the surrounding area ("Market Area"); and

WHEREAS, Gulf intends to construct and operate a wireless cable system ("Wireless cable System") employing one or more OFS, MDS, and/or ITFS channels to serve the Market Area and desires to lease the channel airtime from BL for use in a Wireless Cable System; and

WHEREAS, BL is willing to lease the Channel airtime to Gulf and Gulf is willing to lease such Channel airtime from BL pursuant to the terms and conditions set forth below;

NOW THEREFORE, in consideration of the premises and mutual promises, undertakings, covenants and conditions set forth herein, the parties hereby agree as follows:

## 1. TERM OF AGREEMENT

(a) _Initial Term._ Subject to the provision for earlier termination contained in Sections 9 (a) hereof, the Term of this Agreement (as defined below) shall begin upon the date hereof and shall continue for a period of five (5) years from the start Date as defined in Section 6 hereof ("Initial Term"). The Term of this agreement shall automatically and without further notice be extended for one (1) successive additional five (5) year term to expire on the date ten (10) years from the Start Date ("Initial Renewal Term"), unless Gulf shall have served written notice on BL at least sixty (60) days prior to the Initial Term expiration date ("Expiration Date") that it elects not to renew this Agreement for such Initial Renewal Term. The Initial Term, and any applicable and effective Initial Renewal Term are herein sometimes referred to as the "Term of this Agreement".

(b) _Negotiated Extension._ If Gulf desires to extend the Term of this Agreement beyond the expiration of the Initial Renewal Term provided for in Section 1(a), Gulf shall so notify BL in writing no later than one hundred eighty (180) days prior to the

1

EXHIBIT 1

expiration of the Initial Renewal Term during which time ("Negotiation Period"), BL and Gulf shall negotiate in good faith exclusively with each other with respect to the terms and conditions of the Negotiated Extension. All information exchanged by the parties in connection with such negotiations shall be held in confidence and shall not be disclosed to any third party. At no time prior to or during the Negotiating Period shall BL make an offer to negotiate with or enter into any agreement with any third party. If by the conclusion of the Negotiating Period, Gulf and BL are unable to agree upon the terms and conditions of a Negotiated Extension, BL shall be free to offer any third party the right to use the Channel airtime after the term of this Agreement.

(c)  Conditions of Renewals. Subject to the requirements of subsection (d) below and the first sentence of Section 6(b), any renewals provided for under this Section 1 shall be subject to and contingent on the re-issuance and/or renewal of BL's license to operate the OFS Channel.

(d)  Licenses and Authorizations. During the Term of this agreement, BL shall obtain and maintain in force all licenses, permits and authorizations required in connection with the use of the Channel. BL shall file for the renewal of each such licenses and BL shall take all necessary steps to renew all licenses for the channel and shall not commit any act or engage in any activity that could reasonably be expected to cause the FCC to impair, restrict, revoke, cancel, suspend or refuse to renew the ITFS licenses. Gulf shall pay all reasonable and normal costs associated with attaining such renewals, permits, authorizations and any initial modifications required to relocate the Channel.

## 2. PURCHASE OPTION

BL agrees to provide Gulf the option of purchasing the Channel ("Purchase Option"). This Purchase Option shall be exercised by Gulf at its sole discretion within sixty (60) days after the Start Date of this Agreement under the following terms:

(a)  The total purchase price shall be sixty thousand dollars ($60,000).

(b)  The purchase price will be paid to BL by Gulf in eight (8) equal monthly installments beginning the first month after notification by Gulf to BL of its exercise of the Purchase Option.

(c)  Gulf will pay BL a non-refundable signing fee of $15,000 as its sole relief for any material default by Gulf prior to the Start Date of this Agreement.

## 3. USE OF THE CHANNEL

BL agrees to lease to Gulf and Gulf agrees to lease from BL, on the terms and conditions setforth herein, all of the channel capacity ("Airtime") on the Channel, twenty four (24) hours per day, seven (7) days per week for the purpose of broadcasting Gulf's programming throughout the Market Area to reception points

2

selected by Gulf. There shall be no restriction on the substance, format or type of information or signal to be transmitted thereover (unless required to comply with the provisions of applicable law by including, without limitation, the Communications Act of 1934, as amended, and the Rules and Regulations of the FCC promulgated pursuant thereto).

## 4. TRANSMISSION SITE AND FACILITIES

(a)  Transmissions Facilities. The parties hereto agree that it is in their mutual best interest to relocate the OFS Channel to a centrally located transmit site (the "New Transmission Site") and BL agrees to file for license modifications with the FCC for the purpose of such relocation and to file all other required documentation and/or notifications. Upon receipt of authorization from the FCC to relocate the channel, Gulf is authorized, under the direction of BL, to effect such relocation. Gulf shall pay for and supply such new transmitters, combiners and other components as may be necessary to complete the relocation and re-activation of the Channel at the New Transmission Site.

(b)  Other Modifications of the Channel. Gulf may, from time to time during the Term of this Agreement, request that BL file for FCC approval of modification of BL transmission facilities and BL shall agree to any such request. Such modification may include, but shall not be limited to: (i) further relocation of the transmission facilities to another location, (ii) increase in transmitter power to the maximum authorized by the FCC and (iii) implementation of approved channel capacity expansion technologies. Gulf shall pay all reasonable engineering fees, legal fees and other reasonable costs incurred by BL necessary to obtain any required license or modification thereof.

(c)  Construction. Upon receipt of FCC approval of any relocation or modification of BL transmission facilities, Gulf shall, forthwith begin construction or reconstruction of the transmission facilities in accordance with said FCC authorization. Gulf shall procure, arrange for and pay all costs associated with engineering, purchasing, constructing and installing all equipment that may be required to operate the Channel in accordance with the provisions of such FCC approval.

(d)  Operations and Maintenance. Gulf shall, at its sole cost and expense, operate and maintain the Transmission Facilities in good operating condition and repair. All persons performing maintenance, repairs, or any other duties at the Transmission Facilities shall be technically qualified and properly licensed to perform such duties in accordance with good engineering practices consistent with industry standards and FCC requirements. In the event transmission service is interrupted for any reason for a period exceeding twenty-four (24) hours, Gulf shall notify BL within twenty-four (24) hours of such interruption. In addition, Gulf shall ensure that all FCC tower lighting and painting requirements are followed, and shall hold BL harmless for any violations related thereto.

3

## 5. FEES

In consideration for its use of the Channel under this Agreement, Gulf shall pay to BL Subscriber Fees commencing on the Start Date equal to the average number of subscribers for the prior calendar month for such Channel multiplied by Ten Cents ($0.10) ("Subscriber Fees"). Beginning the first month following the first anniversary of the Start Date, Gulf will pay BL the higher of the Subscriber Fees and a minimum monthly fee (Minimum Fee) of five-hundred dollars ($500). The Minimum Fee shall increase by two-hundred fifty dollars ($250) in each subsequent year to a maximum of two-thousand dollars ($2,000). The Subscriber Fees shall be calculated based on the average number of basic subscribers at the end of each month in accordance with the following formula: Total prior month ending basic subscribers plus total current month end basic subscribers divided by two. Fees for each calendar month shall be payable on the twenty-fifth (25th) day of the following calendar month.

## 6. START DATE

The Start Date shall occur at such time that the FCC grants BL authorization to relocate the Channel to the New Transmission Site and to operate the Channel in accordance with this Agreement. No Start Date shall occur until all of the conditions precedent specified below shall have been fulfilled or waived in writing by Gulf. The Start Date shall be confirmed by notice in writing from Gulf to BL not less than thirty (30) days thereafter. The conditions precedent are:

(a) Material Documents. BL will have available to Gulf for inspection all of the material document and contracts to which BL is a party which in any way affect the Channel, including its licenses and/or other documents from the FCC authorizing its use of the Channel.

(b) Final Order. The FCC shall have issued a Final Order granting BL the authority to operate the Channel in accordance with terms of this Agreement, including the right to relocate the Channel to the New Transmission Site. A Final Order is defined as a valid order that is not subject to further judicial review or FCC reconsideration and which has not been stayed, vacated or otherwise rendered ineffective after all applicable periods for appeal of the order shall have passed without an appeal therefrom having been taken or, if an appeal shall have been taken, such appeal shall have been dismissed and any applicable periods for further appeal shall have passed.

## 7. PROSECUTION OF PETITIONS, AUTHORIZATION & LICENSES

Certain approvals will be required from the FCC in order to effectuate this Agreement. Both parties shall use their best efforts to diligently and timely prepare, file and prosecute before the FCC all petitions, waivers, applications and other documents necessary to secure any FCC approval required to effectuate this Agreement. Gulf shall assist in the preparation and prosecution of such applications and shall pay, upon its prior authorization all filing fees, attorney's fees, engineering fees, and all

4

other expenses in connection therewith. No filing shall be made with the FCC with respect to this Agreement unless both parties have reviewed such filing and consulted in good faith as to its contents.

## 8. LIABILITY INSURANCE

It is agreed that BL shall be insured as a third party named insured under any liability insurance obtained by Gulf. The liability insurance maintained by Gulf shall contain minimum limits of at least $1,000,000/$2,000,000 for bodily injury and $300,000 for property damage. Gulf shall maintain liability, property damage and errors and omissions insurance, in amounts judged adequate by industry standards, to cover its obligations to BL and others under this Agreement. Gulf shall furnish BL, annually, an insurance certificate showing coverages and BL as an additional insured under all such policies. All insurance must be placed and maintained with an insurance company having an A rating by Best Insurance Reports.

## 9. TERMINATION

(a)  This Agreement shall terminate upon expiration of the Term hereof or upon the occurrence of any one of the events set forth in Sections 9 (a) (i) through (iii) below:

(i)  Gulf may terminate this Agreement upon thirty (30) days prior written notice to BL if the FCC has not issued a Final Order within six (6) months from the date hereof granting a license, construction permit or modification request, as the case may be, for the operation of the Channel at the New Transmission Site in accordance with this Agreement.

(ii)  Either party may terminate this Agreement upon the breach of any material warranty or representation or the default or non-performance by the other party of its material obligations under this Agreement or any other agreements, certified or instruments executed and delivered in connection with this Agreement, if such breach, default of non-performance continues uncured for a period of sixty (60) days after the other party's receipt of written notice thereof from the party giving such notice.

(iii)  This Agreement may be terminated by BL if: (A) Gulf shall make a general assignment for the benefit of creditors or Gulf shall commence any case, proceeding or other action seeking to have an order for relief entered on its behalf as debtor or to adjudicate it a bankrupt or insolvent or seeking reorganization, arrangement, adjusting, liquidation dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property or (B) any case, proceeding or other action against Gulf shall be commenced seeking to have an order for relief entered against it as debtor to adjudicate it a bankrupt or insolvent, or

5

seeking or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian of its property.

(b)   Effects of Termination. Termination of this Agreement shall not effect Gulf's obligation to pay any amounts due to BL which accrued prior to the effective date of termination not shall diminish the rights or claims of remedies available to the non-defaulting party arising by reason of such breach, default or non-performance.

(c)   Further Assurances. Upon termination of this Agreement by BL due to a material default by Gulf, Gulf will if required execute all documents and instruments, make all payments and take all steps necessary to confirm and perfect title to BL of the transmission equipment free and clear of any and all liens, security interests, and encumbrances whatsoever.

## 10. TRANSFER OF RIGHTS AND OBLIGATIONS

Except as otherwise provided, neither party may assign or transfer its rights, benefits, duties or obligations under this Agreement without the prior written consent of the other party. Such consent shall not be unreasonably withheld.

## 11. INDEMNIFICATION AND CLAIMS

(a)   Indemnification. Each party agrees to indemnify and hold the other and the other's officers, directors, partners (of Gulf),employees, stockholders and agents (the "Indemnified Parties") harmless from and against any claims, demands, liabilities. losses. reasonable costs and expenses whatsoever, including without limitation reasonable attorney's and accounting fees and arising out of or incurred with respect to: (i) breach of any party's warranties or representations in this Agreement or any other agreements executed and delivered in connection herewith ("Document"), or of any misrepresentation made by or on behalf of such party under the Documents or the breach or non-performance of any covenant or obligation to be performed by such party under the Documents or (ii) any misrepresentation in or omission from any certificate or instrument or other information delivered or to be delivered by such party in connection with or related to the transactions contemplated by this Agreement or (iii) injury to or death of persons or damage as a result of, arising out of or in any manner connected with, the other party's performance of the Documents (except liability resulting solely from the Indemnified Parties' negligence or misconduct).

(b)   Gulf shall indemnify, defend and hold BL harmless from any and all claims, damages, causes of action, penalties, statutory damages, interest, and costs and expenses, including attorney's fees and court costs, arising out of any transmission over the Transmission Facilities prohibited by Section 7.4 or that violates applicable federal or state lottery laws, the Communications Act of 1934, as amended, or the rules and policies of the FCC, or that infringes in any respect the copyright, trademark, property or other rights of any person, or resulting from Gulf's

breach of the Agreement or from any negligence, omission or wrongful act by Gulf, its agents or employees. This indemnification shall include the providing of full legal defense on behalf of BL, including BL's right to select counsel, and to have all of BL's reasonable attorney's fees and reasonable costs, taxable and nontaxable to be paid by Gulf.

(c)   Notification of Claims. Each Indemnified Party shall give notice to the party required to provide indemnification (the "Indemnifying Party") promptly after such Indemnified Party has actual knowledge of any claim as to which indemnity may be sought, and shall permit the Indemnifying Party to assume the defense of any such claim or any litigation resulting therefrom; provided, however, that counsel selected by the Indemnifying Party to conduct the defense of such claim or litigation shall be approved by the Indemnified Party and that the Indemnified Party may participate in such defense at its own expense. The failure of an Indemnified Party given notice as provided herein shall not relieve the Indemnifying Party of its obligations under Section 10 unless such failure to give notice shall materially adversely affect the Indemnifying Party in the defense of any such claims or any such litigation. No indemnifying Party shall, except with the prior written approval of the Indemnified Party, consent to entry of any judgment or enter into any settlement which does not include as an unconditional term thereof the giving to the Indemnified Party by the claimant or plaintiff a release from all liability in respect to such claim or litigation.

## 12.  MISCELLANEOUS

(a)   Obligation to Transmit. Nothing in this Agreement shall be constructed to create a duty on the part of Gulf actually to transmit any minimum number of hours of programming, except as may be required by FCC rules and regulations.

(b)   Nature of Programming. Gulf is prohibited from and shall not use BL's Channel in any manner for any unlawful purpose including, but not limited to the advertisement, transmission or delivery of any movie, program or material which is rated "X" or advertised as "X", or similar rating by the Classification and Rating Administration of the Motion Picture Association of America, Inc. (or any successor thereto or other public or private classification or rating service), or any movie, program, or material that is obscene, indecent, profane, or defamatory under 18 U.S.C. Section 1464, as it may be amended from time to time, or under any other federal statute, regulation or rule, or which movie, program, or material is obscene, indecent, profane or defamatory under the laws of the state where the Transmission Facilities are located, or under the laws of any state, or are in violation of any other law, order, ordinance or regulation of any body exercising jurisdiction over Gulf or BL.

(c)   Force Majeure. Notwithstanding anything contained in this Agreement to the contrary, neither party shall be liable to the other for failure to perform any obligation under this Agreement (nor shall any charge or payments be made in respect thereof) if prevented from doing so by reason of acts of God, strikes, labor unrest, embargoes, civil commotion, rationing or other governmental orders or

7

requirements, acts of civil or military authorities, or other contingencies if and to the extent such cause is beyond the reasonable control of such party and all requirements as to notice, another performance required hereunder within a specified period, shall be automatically extended to accommodate the period of any such cause which shall interfere with such performance.

(d)    Specific Performance. The parties acknowledge and agree that the rights conferred upon Gulf and BL hereunder are of a special, unique, unusual and extraordinary character, which gives them a peculiar value the loss of which cannot be adequately or reasonably compensated for in damages in an action at law and that the breach by either party of any of the provision of this Agreement will cause the other irreparable injury. In such event, the injured party shall be entitled, as a matter of right, without further notice, to require specific performance of all of the acts, services and undertaking required hereunder, including the obtaining of all requisite authorizations to execute or perform this Agreement and to obtain injunctive and other equitable relief in any competent court to prevent the violation or threatened violation of any of the provision of this Agreement. Neither this provision nor any exercise by Gulf or BL of its rights to equitable relief or specific performance herein granted shall constitute a waiver by other of any other rights which it may have to damages or otherwise.

(e)    Notices. Any notice required to be given by either party to the other party shall be in writing and, unless otherwise provided, shall be effective when personally delivered (e.g., by messenger) to the individuals listed below or when deposited in the United States mail in a sealed envelope with first class postage prepaid and certified, return receipt requested, addressed to BL or to Gulf, as the case may be, at the following addresses or such other addresses as may be provided by a notice given as prescribed by this paragraph:

If to BERNARD LOVE:                    If to KINGSWOOD ASSOCIATES
Bernard Love                          Kingswood Associates
14962 E. 45th Avenue                  2219 Thousand Oaks Blvd., Suite 238
Denver, CO 80239                      Thousand Oaks, CA 91362
                                      ATTN. Barry Mitchell

If to GULF:
Bay Area Cablevision
821 Malcolm Road
Burlingame, CA  94010
ATTN. Tony Thomson

(f)    Announcements. No announcement to the press or to any third party of the transactions contemplated herein or to the provisions of this Agreement shall be made by either party unless the same shall be approved in advance in writing by both Gulf and BL.

8

(g)   Severability of Provisions. If any provision of this Agreement is held invalid, the remainder of this Agreement shall not be affected thereby.  If any provision hereof is found by the FCC to be unacceptable, the parties shall negotiate in good faith to agree to a replacement provision acceptable to the FCC.

(h)   Entire Agreement. This Agreement states the entire agreement as of this date between Gulf and BL with respect to the subject matter hereof and supersedes all pre-existing oral, letter or other agreements or commitments with respect thereto. This Agreement may be modified only by agreement in writing executed by both parties hereto. Subject to the provision of Section 9, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

(i)   Payment of Expenses. Except as otherwise provided, BL and Gulf shall pay their own expenses incident to the preparation and carrying out of the transactions contemplated by this Agreement.  Whenever any provision of this Agreement requires Gulf to pay BL expenses, such expenses shall be reasonable and Gulf shall have the right to approve in advance an estimate for any work to be performed. Nothing herein shall be construed as giving Gulf authority to participate in the selection of any attorney, engineer or other expert retained to perform services for BL.

(j)   If it shall be necessary for either BL or Gulf to employ an attorney to enforce their respective rights pursuant to this Agreement because of the Default of the other party, the defaulting party shall reimburse the prevailing party for reasonable attorneys' fees.

(k)   Further Action. From time to time after the date of execution hereof, the parties shall take such further action and execute such further documents, assurances and certificates as either party may reasonably request of the other in order to effectuate the purposes of this Agreement. Neither party will take any action which would adversely affect the rights granted by it to the other party.

(l)   Counterparts. This Agreement shall be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument and shall be effective when each of the parties hereto shall have duly executed this Agreement.

(m)  Effect of Headings. The headings in this Agreement are inserted for convenience only and shall not constitute a part hereof or be used in the interpretation hereof.

(n)   Dealings with third Parties. Neither party is, nor shall either parties hold itself out to be, vested with any power or right to contractually bind, or act on behalf of the other as its contracting broker, agent or otherwise for committing, selling, conveying or transferring any of the other party's assets or property, contracting for or in the

9

## ALL-PURPOSE ACKNOWLEDGMENT

NO 205

State of _California_

County of _San Mateo_ }

On _Jan. 28, 1993_ before me, _Jennifer Beth Markley, Notary Public_
DATE                                    NAME, TITLE OF OFFICER - E.G. "JANE DOE, NOTARY PUBLIC"

personally appeared _Tony Thomson_
                     NAME(S) OF SIGNER(S)

☐ personally known to me - OR - ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
SIGNATURE OF NOTARY

**OFFICIAL SEAL**
JENNIFER BETH MARKLEY
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My Comm. Expires Oct. 22, 1994

**CAPACITY CLAIMED BY SIGNER**

☐ INDIVIDUAL(S)

☒ CORPORATE
  OFFICER(S) _President_
              TITLE(S)

☐ PARTNER(S)

☐ ATTORNEY-IN-FACT

☐ TRUSTEE(S)

☐ SUBSCRIBING WITNESS

☐ GUARDIAN/CONSERVATOR

☐ OTHER: _____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

_____

_____

_____

**ATTENTION NOTARY:** Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to unauthorized document.

THIS CERTIFICATE
MUST BE ATTACHED
TO THE DOCUMENT
DESCRIBED AT RIGHT:

Title or Type of Document _Channel Lease Agreement_

Number of Pages _10_     Date of Document _01-29-93_

Signer(s) Other Than Named Above _Bernard Love_

name of the other party, or making any contractually binding representatives as to the other party.

(o)    Consent or Approval. Where the consent or approval of either party is required pursuant to this Agreement, such consent or approval shall not be unreasonably withheld.

(p)    Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal law and the laws of the State of California.

(q)    Compliance With Federal, State and Local Laws. Gulf and BL shall comply with all federal, state, municipal and local laws, rules and regulations applicable to this Agreement.

(r)    Construction. The language in all parts of this Agreement shall in all cases be constructed as a whole according to its fair meaning, strictly neither for nor against any party hereto and without implying a presumption that the terms hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the person who prepared the document, it being agreed that all parties hereto have been represented by counsel and that representatives of all parties have participated in the presentation hereof.

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the day and year first above written:

GULF AMERICAN CABLE GROUP, INC.           BERNARD LOVE

_____                  _____
Tony Thomson                               Bernard Love
President

Witness:

_____
Notary Public                              _____
                                           Notary Public

                          MY COMMISSION EXPIRES FEB. 11, 1995

                          SPACE AGE FEDERAL CREDIT UNION
                             12510 E. ILIFF AVENUE
                          AURORA, COLORADO  80014-1260

10



## Sprint®

**PLEASE READ INSTRUCTIONS ON REVERSE**

238

| | FROM | TO | CUBE | MAILSTOP |
|---|---|---|---|---|
| 1 | Name Jane Doe KSOPHT010-1A751 | John Doe | 1A221 | KSOPHT0101 |
| | Mailstop + Cube | | | |
| 2 | Name Deborah Coleman KSLWR A0211 | Dave Parker | 2A309 | KS oPH mo 210 |
| | Mailstop + Cube | | | |
| 3 | Name Dave Parker KSOPHMO210-2A304 | Vernon Brown | 3B418 | KSOPHMO304 |
| | Mailstop + Cube | | | |
| 4 | Name | | | |
| | Mailstop + Cube | | | |
| 5 | Name | | | |
| | Mailstop + Cube | | | |
| 6 | Name | | | |
| | Mailstop + Cube | | | |
| 7 | Name | | | |
| | Mailstop + Cube | | | |
| 8 | Name | | | |
| | Mailstop + Cube | | | |
| 9 | Name | | | |

<u>**AGREEMENT FOR THE ASSIGNMENT**</u>
<u>**OF MMDS LICENSE**</u>

**THIS AGREEMENT FOR THE ASSIGNMENT OF MMDS LICENSE** ("Agreement") is made and entered into this ____ day of May, 1996, by and between Bernard Love ("Assignor"), and Bay Area Cablevision, Inc., a California corporation ("Assignee").

**W I T N E S S E T H:**

WHEREAS, Assignor is the sole owner of and has obtained a License from the Federal Communications Commission ("FCC") for Multichannel Multipoint Distribution Service ("MMDS") Station WNTM-579 at Los Gatos, California on Channel H2 ("the License");

WHEREAS, Assignee desires to acquire WNTM-579 and take assignment of the License and any related transmission facilities owned by Assignor for the operation of the Station, WNTM-579 consistent the MMDS Channel Lease Agreement ("Lease Agreement") entered into between Assignor and Gulf American, Inc. ("Gulf"), on January 22, 1993, and subsequently assigned, with the consent of Assignor, by Gulf to Assignee on February 18, 1994.

WHEREAS, Assignor desires to sell WNTM-579 and any related transmission facilities owned by Assignor, and to assign the License for the operation of WNTM-579;

WHEREAS, all of the conditions precedent to exercising the option set forth in Sections 2 and 6 of the Lease Agreement have been satisfied or waived;

WHEREAS, Assignee has taken all steps necessary to exercise its option to acquire WNTM-579 and License under the Lease Agreement; and

WHEREAS, the parties intend to seek the approval of the FCC for the assignment of said License, and to consummate the transactions described herein after the FCC has granted its consent thereto;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the Parties agree as follows:

1.  <u>Assets to be Conveyed</u>. On the Closing Date, as defined hereinafter, pursuant to the terms, conditions and exceptions set forth in this Agreement and the Lease Agreement, Assignor will assign, transfer and deliver to Assignee or its designee, and Assignee or its designee shall purchase and acquire from Assignor the License, records and other station documents and any related transmission facilities owned by Assignor (the "MMDS Station"), and Assignor shall execute and deliver to Assignee or its designee all such other documents and instruments as Assignee may reasonably request in order to effectuate the assignment of the License to Assignee or its designee.

Exhibit 2

2.    <u>Purchase Price and Payment Terms</u>.  The purchase price to be paid to Assignor for the MMDS Station being assigned hereunder and any related equipment and assets of the MMDS Station shall be Sixty Thousand Dollars ($60,000.00).  In accordance with Section 2 of the Lease Agreement such funds shall be disbursed in eight equal monthly installments of Seven Thousand Five Hundred Dollars ($7,500.00) commencing with the month following the exercise of the option.

3.    <u>Closing</u>.    This Agreement shall be consummated at a closing ("Closing") to be held at a location mutually agreed by the parties no later than five (5) days after the FCC has released a Public Notice reflecting its consent to the assignment of the License, except as otherwise required in accordance with the escrow agreement referenced in Section 11 hereof.  At Closing, Assignor shall execute and provide Assignee or its designee with such instruments of assignment or Bill of Sale as Assignee or its designee may request as evidence of the Assignment of the MMDS Station and its License.

4.    <u>Covenants, Representations and Warranties of Assignor</u>.

(a)  Assignor makes the following representations and warranties:

(i)  Assignor is the licensee of MMDS Station WNTM-579, and holds the license free and clear of all liens, encumbrances or security interests of any kind, and has maintained the License in full force and effect.  Except for the Lease Agreement, there are no contractual agreements, commitments or arrangements with respect to the use of the channel capacity on the channel frequencies licensed by the FCC under the License.

(ii)  Assignor has all requisite authority to enter into this Agreement, and all necessary actions on the part of Assignor to authorize the execution and delivery of this Agreement and the performance of the obligations of Assignor herein have been taken.  This Agreement is valid and legally binding upon Assignor and enforceable in accordance with its terms except to the extent that enforceability thereof may be limited by bankruptcy, insolvency, or the laws relating to the enforcement of creditor's rights or by the application of equitable principles.

(iii)  Subject to obtaining FCC consent by Final Order to the assignment of the License to Assignee, Assignor is not restricted in any manner by any third party or governmental authority from carrying out any portion of this Agreement.

(iv)  There are no threatened or pending actions, suits or other judicial or administrative proceedings which would materially and adversely affect Assignor's power, authority or

2

ability to enter into this Agreement and to carry out the transactions contemplated hereby relating to the License.

(v)    The License is in full force and effect and there are no threatened or pending complaints, oppositions or actions that could result in the forfeiture or material impairment of, or loss of any rights under the License.    Assignor has constructed and is operating the MMDS Station in accordance with its authorization and the FCC's Rules. Assignor knows of no act or omission that could result in the forfeiture or cancellation or material impairment of the License.

(vi) Pending consummation of the Assignment of the License, Assignor will file all applications, documents, papers, pleadings, renewals, petitions, or extensions reasonably necessary to maintain the License in full force and effect, and to comply with the FCC Rules.

(vii)    Assignor represents that the foregoing representations and warranties and any statements or Schedules furnished or to be furnished by Assignor pursuant to this Agreement are true, correct and complete and do not omit or fail to state any material fact necessary to make the statements contained therein not misleading.  The representations and warranties will be true as of the Closing as though such representations were made at such time.  Assignor understands and agrees that Assignee may make, but shall not be required to make, an independent investigation of the warranties and representations herein set forth, and that any investigations shall not affect Assignee's and its designees' right to rely on these representations and warranties.

(b)  Assignor will preserve the accuracy of the representations and warranties and will not enter into agreements regarding the License.

5. <u>Covenants, Representations and Warranties of Assignee</u>

(a)  Assignee makes the following representations and warranties:

(i)  Assignee is a corporation, duly organized, validly existing and in good standing under the laws of the State of its formation.  Assignee has all necessary power and authority to enter into this Agreement, and to carry out the transactions contemplated hereby, and Assignee or its designee is and will be qualified to be the licensee of the MMDS Station under the rules and regulations of the FCC.

(ii) All necessary actions on the part of Assignee to authorize the execution and delivery of this Agreement and the performance of the obligations of Assignee herein have been taken. This Agreement is valid and legally binding upon Assignee and enforceable in accordance with its terms except to the extent that

3

enforceability thereof may be limited by bankruptcy, insolvency, or the laws relating to the enforcement of creditor's rights or by the application of equitable principles.

(iii)  Assignee is not restricted in any manner by any provision in any contract, any court order, or governmental order from carrying out any portion of this Agreement.

(iv)  There are pending no actions, suits or other judicial or administrative proceedings which would materially and adversely affect Assignee's power, authority or ability to enter into this Agreement and to carry out the transactions contemplated hereby.

6.  Conditions Precedent to Assignee's Obligations.  If at the Closing Date the following conditions are satisfied, Assignee or its designee shall be obligated to acquire the MMDS Station License to the extent set forth and in accordance with the terms and conditions of this Agreement.

(a)  Representations and Warranties.  The representations and warranties of Assignor contained herein shall be true in all material respects as of and at the Closing Date as though made on such date.  Assignor shall have performed and complied with all obligations and covenants required by this Agreement to be performed or complied with by Assignor on or prior to the Closing Date.

(b)  Litigation.  There is not on the Closing Date any litigation, proceedings or investigations before any administrative or judicial body, federal, state or local, pending or, to the knowledge of Assignor, threatened which might impair materially the ability of Assignor to carry out properly the provisions of this Agreement.

(c)  License.  Assignor shall be the holder of the License and such License shall be valid and in full force and effect and free and clear of conditions, competing applications, petitions to deny, material complaints, appeals or any restrictions which might limit the operation of the Station as authorized.

(d)  Channel Lease.  Except for the Lease Agreement, there are no contractual agreements, commitments or arrangements with respect to the use of channel capacity on the channel frequencies licensed by the FCC under the License.

Any of these conditions may at the election of Assignee or its designee be waived.

4

7.   <u>Conditions Precedent to Assignor's Obligations</u>.  If, at the Closing Date, the following conditions are satisfied, Assignor shall be obligated to sell the MMDS Station in accordance with the terms and conditions of this Agreement.

(a)   <u>Representations and Warranties</u>. The representations and warranties of Assignee contained herein shall be true in all material respects as of and at the Closing Date as though made on such date.   Assignee shall have performed or complied with all obligations and covenants required by this Agreement to be performed or complied with by Assignee on or prior to the Closing Date.

Any of these conditions may at the election of Assignor be waived.

8.   <u>Remedies on Default Prior to Closing</u>.

(a)   In the event of a material breach by Assignee prior to Closing of any term or condition of this Agreement or any warranty or representation contained herein, so long as Assignor is not in breach of this Agreement, Assignor will be entitled, at its option, to pursue all remedies at equity and at law as are determined by it to be appropriate.   This provision reflects the Assignee's understanding that the MMDS Station License is unique, that actual damages are difficult if not impossible to determine, and that any default by Assignee will cause Assignor irreparable, substantial, damaging consequences.   The rights conferred by this Paragraph may not be exercised unless Assignor has given Assignee ten (10) days written notice of the specific nature of the breach and Assignee has failed to correct it within that period.

(b)   In the event of a material breach by Assignor prior to Closing of any term or condition of this Agreement or any warranty or representation contained herein, Assignee may, at its option, pursue all remedies at equity and at law as are determined by it to be appropriate.   This provision reflects the Assignor's understanding that the MMDS Station is unique, that actual damages are difficult if not impossible to determine, and that any default by Assignor will cause Assignee irreparable, substantial, damaging consequences.   The rights conferred by the above may not be exercised unless Assignee has given Assignor ten (10) days written notice of the specific nature of the breach and Assignor has failed to correct it within that period.

9.   <u>Commission Consent</u>. Notwithstanding anything herein to the contrary, the terms and conditions of this Agreement are subject to the Commission granting consent to the assignment of the License by Assignor to Assignee or its designee.

10. <u>Applications for Consent</u>.   Assignee, with full cooperation of Assignor, shall prepare and file an application requesting Commission consent to assignment of the License from Assignor to Assignee or its assignment designee as soon as possible after the date of this Agreement and in no event later than ten (10) days from the execution hereof.   They shall promptly and diligently file and expeditiously prosecute all necessary amendments to that application, briefs, pleadings, documents and supporting data, and take all such actions and give all such notices as may be required or requested by the FCC or as may be appropriate in any effort to expedite the approval of the FCC of the assignment of the MMDS Station License to Assignee or its designee.

11.   <u>Third Party Designee</u>.   Assignee has entered into a certain Stock Purchase Agreement ("The Stock Purchase Agreement") with Pacific Telesis Group ("PTG") dated November 9, 1995.   In connection with that transaction, Assignee has designated Bay Area Cablevision, Inc., as it will exist after the consummation of the Stock Purchase Agreement, as the party to whom the License will be assigned in the application described in Section 10 hereof. Assignor agrees to coordinate the prosecution of the application described in Section 10 hereof with Assignee and its PTG designee, and not to consummate such assignment except as provided for in the Escrow agreement executed simultaneously herewith and unless Assignor has first obtained the prior written consent of Assignee. In the event that the above-referenced Stock Purchase Agreement is not consummated for any reason, Assignor agrees to cooperate with Assignee in the withdrawal, and/or refiling of the assignment application described in Section 10 hereof to any other person, corporation or other legal entity qualified to be an FCC licensee that the Assignee shall then designate.

12.   <u>Costs and Expenses</u>.   Assignee shall bear all of the reasonable costs and expenses with respect to the preparation and prosecution of the FCC applications.   Notwithstanding anything contained herein to the contrary, each of the parties shall bear all of the legal fees and other costs and expenses incurred by it with respect to the negotiation and execution of this Agreement.

13.   <u>Control and Access</u>.   Prior to Closing, Assignee or its designee shall not directly or indirectly control, supervise or direct, or attempt to control, supervise or direct, any activities associated with the License or the MMDS Station, except as provided in the Lease Agreement between the parties.   Such activities shall be the sole responsibility of and in the complete discretion of Assignor.   After Closing, Assignor and its agents shall not directly or indirectly control, supervise or direct, or attempt to control, supervise or direct, any activities associated with the License or the MMDS Station.   Such activities shall be the sole responsibility of and in the complete discretion of Assignee or its designee.

6

17.  <u>Governing Law</u>.  This Agreement shall be construed and governed in accordance with the laws of the State of California.

18.  <u>Attorney Fees</u>.  In the event of commencement of suit by either party to enforce the provisions of this Agreement, the prevailing party shall be entitled to receive attorneys' fees and costs as a court may adjudge reasonable in addition to any other relief granted.

19.  <u>Counterparts</u>.  More than one counterpart of this Agreement may be executed by the parties hereto, and each fully executed counterpart shall be deemed an original.

**ASSIGNOR:**

WITNESS

**BERNARD LOVE**

_BE Mitchell_

_Bernard Love_

**ASSIGNEE:**

**BAY AREA CABLEVISION, INC.**

By: _____

_edo-1\600-0418.AG1\1996_

8

17. <u>Governing Law</u>. This Agreement shall be construed and governed in accordance with the laws of the State of California.

18. <u>Attorney Fees</u>. In the event of commencement of suit by either party to enforce the provisions of this Agreement, the prevailing party shall be entitled to receive attorneys' fees and costs as a court may adjudge reasonable in addition to any other relief granted.

19. <u>Counterparts</u>. More than one counterpart of this Agreement may be executed by the parties hereto, and each fully executed counterpart shall be deemed an original.

ASSIGNOR:

WITNESS

BERNARD LOVE

_____        _____

ASSIGNEE:

BAY AREA CABLEVISION, INC.

_____   By:  _____
                               *Brian Reynolds*
                               *C.O.O.*



                               *Did not reclaim*

cdo-1\600-0418.AG1\1996

8

SUM-100

**SUMMONS**
**(CITACION JUDICIAL)**

COPY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Bay Area Cablevision, Inc., a California corporation;
Does 1 through 50, inclusive,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

RECEIVED

MAR 12 2008

SPRINT LAW DEPT.

JAN 14 08

KIRI TORRE
EXEC. OFFICER / CLERK
SUPER. COURT OF CA
CO. SANTA CLARA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
Bernard Love

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* |

**1 0 8 CV 103157**

Santa Clara Superior Court
191 N First Street

San Jose CA 95113
Downtown Branch

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Anthony E. Bell, Esq.   (SB#139811)         213-892-6340    213-995-1800
Law Offices of Anthony E. Bell, Inc.
333 S Grand Ave., 25th Floor
Los Angeles CA 90071

DATE:                          Kiri Torre              Clerk, by                                        , Deputy
*(Fecha)*   JAN 14 2008   Chief Executive Officer/Clerk   J. Cao-Nguyen   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1.  ☐  as an individual defendant.
2.  ☐  as the person sued under the fictitious name of *(specify):*

3.  ☐  on behalf of *(specify):*

      under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
              ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
              ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
              ☐ other *(specify):*
4.  ☐  by personal delivery on *(date):*

                                                                          Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
PLUS

Code of Civil Procedure §§ 412.20, 465

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney

SCANNED


**CIVIL LAWSUIT NOTICE**
Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA  95113

CASE NUMBER: **108CV103157**    ATTACHMENT CV-5012

---

## READ THIS ENTIRE FORM

_PLAINTIFFS_ (the person(s) suing):  Within 60 days after filing the lawsuit, you must serve each defendant with the _Complaint_, _Summons_, an _Alternative Dispute Resolution (ADR) Information Sheet_, and a copy of this _Civil Lawsuit Notice_, and you must file written proof of such service.

---

_DEFENDANTS_ (The person(s) being sued):  You must do each of the following to protect your rights:

1. You must file a written response to the _Complaint_, in the Clerk's Office of the Court, within 30 days of the date the _Summons_ and _Complaint_ were served on you;
2. You must send a copy of your written response to the plaintiff; and
3. You must attend the first Case Management Conference.

   Warning:  If you do not do these three things, you may automatically lose this case.

---

_RULES AND FORMS:_  You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms.  You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing: 408-293-6177 or beckv@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

_CASE MANAGEMENT CONFERENCE (CMC):_  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a _Case Management Statement_ (Judicial Council form CM-110) at least 15 calendar days before the CMC.

You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.

---

Your Case Management Judge is: _Mary Jo Levinger_    Department:  **5**

The 1st CMC is scheduled for:  (Completed by Clerk of Court)
   Date: **JUN 10 2008**  Time: **2:15 PM**  in Department    **5**

The next CMC is scheduled for:  (Completed by party if the 1st CMC was continued or has passed)
   Date: _____  Time: _____  in Department _____

---

_ALTERNATIVE DISPUTE RESOLUTION (ADR):_  If all parties have appeared and filed a completed ADR Stipulation Form (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference.  Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

_WARNING:_ Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interest of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and concerns, instead of focusing exclusively on legal rights.

ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

CV-5002 REV 6/06



Stacey L. Herter
Direct: (949) 223-7136
stacey.herter@bryancave.com

March 19, 2008

**VIA U.S. MAIL**
**AND FACSIMILE:**

**FAX: (213) 892-2240**
Anthony E. Bell, Esq.
Law Offices of Anthony E. Bell, Inc.
333 South Grand Ave., 25th Floor
Los Angeles, California 90071-1504

**FAX: (303) 832-6653**
James F. Scherer, Esq.
Solomon Pearl Blum Haymann & Stich, LLP
1801 Broadway, Suite 500
Denver, Colorado 80202

Re:    *Love v. Bay Area Cablevision, Inc.*

Dear Messrs. Bell and Scherer:

Please allow this to confirm your respective telephone conferences with James
Lawrence of our Kansas City office wherein you discussed the service of Plaintiff's
Complaint upon Bay Area Cablevision.    In particular, the parties agreed that
yesterday, March 18, 2008, is the effective date of service of the Complaint; thus, Bay
Area Cablevision has 30 days from March 18th to respond to Plaintiff's Complaint.

If this does not comport with your understanding of the agreement, then please
contact me immediately.

Finally, in addition to Mr. Lawrence, please feel free to contact Gregory Trimarche,
Stephanie Blazewicz or me regarding this matter.

Sincerely,

Stacey L. Herter

IR01DOCS\363263.1

Bryan Cave LLP

1900 Main Street
Suite 700
Irvine, CA 92614-7328
Tel (949) 223-7000
Fax (949) 223-7100
www.bryancave.com

Chicago
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
Kuwait
London
Los Angeles
Milan
New York
Phoenix
Shanghai
St. Louis
Washington, DC

**Bryan Cave International Trade**
*A TRADE CONSULTING SUBSIDIARY
OF NON-LAWYER PROFESSIONALS*
www.bryancavetrade.com

Bangkok
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

**Bryan Cave Strategies**
*A GOVERNMENT RELATIONS AND
POLITICAL AFFAIRS SUBSIDIARY*
www.bryancavestrategies.com
Washington, DC
St. Louis

```
               *********************
        ***    TX REPORT    ***
               *********************


   TRANSMISSION OK

   TX/RX NO                2759
   RECIPIENT ADDRESS       #024912138922240
   DESTINATION ID
   ST. TIME                03/19 17:22
   TIME USE                00'30
   PAGES SENT              2
   RESULT                  OK
```



# Facsimile Cover

**Bryan Cave LLP**
1900 Main Street, Suite 700
Irvine, CA 92614-7328
Tel (949) 223-7000
Fax (949) 223-7100
www.bryancave.com

This facsimile contains information that (a) is or may be LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE and (b) is intended for the use of the Addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, copying or distributing this facsimile is prohibited. If you have received this facsimile in error, please telephone us immediately and mail the facsimile back to us at the address to the right. Thank you.

| | | |
|---|---|---|
| Date: | March 19, 2008 | |
| From: | Stacey L. Herter | Telephone:    (949) 223-7136 |
| Sent by: | Susan Stingley | |
| | | |
| To: | **Anthony E. Bell, Esq.** | **Fax Number:**    **(213) 892-2240** |
| Company: | Law Offices of Anthony E. Bell, Inc. | Telephone: |
| | | |
| To: | **James F. Scherer, Esq.** | **Fax Number:**    **(303) 832-6653** |
| Company: | Solomon, Pearl, Blum, Haymann & Stich, LLP | Telephone: |

| | | |
|---|---|---|
| Matter | N000127 | Number of Pages Including Cover: 2 |
| Message: | | |

To Sender:

Do you wish to be contacted when fax is sent?                          ☐ Yes   ☒ No

Do you wish to be contacted at your home/office if fax
    cannot be sent within one hour?  Tel:                          ☐ Yes   ☒ No

```
        *********************
  ***    TX REPORT    ***
        *********************


TRANSMISSION OK

TX/RX NO              2760
RECIPIENT ADDRESS     #079913038326653
DESTINATION ID
ST. TIME              03/19 17:23
TIME USE              00'45
PAGES SENT            2
RESULT               OK
```



# Facsimile Cover

This facsimile contains information that (a) is or may be LEGALLY PRIVILEGED, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE and (b) is intended for the use of the Addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, copying or distributing this facsimile is prohibited. If you have received this facsimile in error, please telephone us immediately and mail the facsimile back to us at the address to the right. Thank you.

**Bryan Cave LLP**
1900 Main Street, Suite 700
Irvine, CA 92614-7328
Tel (949) 223-7000
Fax (949) 223-7100
www.bryancave.com

| | | | |
|---|---|---|---|
| Date: | March 19, 2008 | | |
| From: | Stacey L. Herter | Telephone: | (949) 223-7136 |
| Sent by: | Susan Stingley | | |
| | | | |
| To: | **Anthony E. Bell, Esq.** | **Fax Number:** | **(213) 892-2240** |
| Company: | Law Offices of Anthony E. Bell, Inc. | Telephone: | |
| | | | |
| To: | **James F. Scheter, Esq.** | **Fax Number:** | **(303) 832-6653** |
| Company: | Solomon, Pearl, Blum, Haymann & Stich, LLP | Telephone: | |
| | | | |
| Matter | N000127 | Number of Pages Including Cover: 2 | |
| Message: | | | |

To Sender:

Do you wish to be contacted when fax is sent?    ☐ Yes    ☒ No

Do you wish to be contacted at your home/office if fax cannot be sent within one hour?  Tel:    ☐ Yes    ☒ No

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Love, Bernard

E-FILING

**DEFENDANTS**

Bay Area Cablevision, Inc.

**(b)** County of Residence of First Listed Plaintiff   Denver, State of CO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Fairfax, State of VA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See Attachment

ADR

Attorneys (If Known)

See Attachment

C08 02012 HRL

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [x] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | [ ] 892 Economic Stabilization Act |
| | | | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | or Defendant) | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | [ ] 871 IRS—Third Party | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | 26 USC 7609 | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | to Justice |
| | [ ] 446 Amer. w/Disabilities - | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | [ ] 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [ ] 1  Original Proceeding
- [x] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
47 U.S.C. Section 151

Brief description of cause:
Federal Communications Commission's recognition of the rightful holder of a spectrum license

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $ Decl Relief & Acctg.
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". Not applicable.

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [x] SAN JOSE

DATE  4/16/08

SIGNATURE OF ATTORNEY OF RECORD

ORIGINAL

## LOVE, BERNARD V. BAY AREA CABLEVISION, INC.

## ATTACHMENT TO CIVIL COVER SHEET

**I(c)**

**Plaintiff's Attorneys**

Anthony E. Bell
Law Offices of Anthony E. Bell, Inc.
333 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1504
Tel:  (213) 892-6340
Fax: (213) 892-2240

James F. Scherer (*pro hac vice application to be filed*)
Solomon, Pearl, Blum, Haymann & Stich, LLP
1801 Broadway, Suite 500
Denver, CO  80202
Tel:  (303) 832-6686
Fax:  (303) 832-6653

**Defendant's Attorneys**

Bryan Cave LLP
Gregory D. trimarche
1900 Main Street, Suite 700
Irvine, CA  92614-7328
Tel:  (949) 223-7000
Fax:  (949) 223-7100

Bryan Cave LLP
Stephanie A. Blazewicz
2 Embarcadero Center, Suite 1410
San Francisco, CA  94111
Tel:  (415) 675-3400
Fax:  (415) 675-3434