**BRYAN CAVE LLP**
Gregory D. Trimarche, California Bar No. 143686
1900 Main Street, Suite 700
Irvine, California 92614-7328
Telephone:  (949) 223-7000
Facsimile:  (949) 223-7100
gregory.trimarche@bryancave.com

**BRYAN CAVE LLP**
Stephanie A. Blazewicz, California Bar No. 240359
2 Embarcadero Center, Suite 1410
San Francisco, CA 94111
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
stephanie.blazewicz@bryancave.com

Attorneys for Defendant
BAY AREA CABLEVISION, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BERNARD LOVE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BAY AREA CABLEVISION, INC., a California Corporation; DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | Case No. C08 02012 JW<br><br>**DEFENDANT BAY AREA CABLEVISION, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　　　September 22, 2008<br>Time:　　　　9:00 a.m.<br>Courtroom:　　8 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 22, 2008, at 9:00 a.m. or as soon as the matter may be heard, in Courtroom 8 of the above-entitled Court, located at 280 South 1st Street, San Jose, California 95113, defendant Bay Area Cablevision, Inc. ("BAC") will move the Court

1  for an order dismissing all claims in the Complaint, with prejudice, pursuant to Federal Rule of
2  Civil Procedure 12(b)(6).
3      This Motion is made on the grounds that the Plaintiff Bernard Love ("Plaintiff") fails to
4  state a claim, because the claims are barred by the statute of limitations pursuant to Sections 337
5  and 338(d) of the California Code of Civil Procedure.
6      This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points
7  and Authorities, all pleadings and papers on file in this action, the oral argument of counsel, and
8  such other matters as the Court may consider.

10  Dated: June 23, 2008         BRYAN CAVE LLP
                                 Gregory D. Trimarche
11                               Stephanie A. Blazewicz
12
                                 By: _____
13                                   Stephanie A. Blazewicz
                                 Attorneys for Defendant
14                               BAY AREA CABLEVISION, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a dispute regarding the proper ownership of a license issued by the Federal Communications Commission ("FCC") for the use of regulated electromagnetic spectrum. Essentially, Plaintiff Bernard Love ("Plaintiff") alleges that someone forged his signature on an agreement which assigned Plaintiff's rights under the license to Defendant Bay Area Cablevision, Inc. ("BAC"). Plaintiff seeks a judicial declaration as to the ownership of the license and an accounting of profits realized by BAC under the license. Plaintiff's complaint was filed January 14, 2008.

Assuming Plaintiff has a viable cause of action (though, he does not), the time to bring this claim lapsed years ago. Plaintiff admits that the allegedly fraudulent assignment that forms the basis of this action occurred over twelve years ago (in May of 1996), and admits that he began investigating "the status of the payments due" to him under the license in 1998. Whether the three-year statute of limitation applicable to fraud claims or the four-year statute of limitation applicable to contract claims is deemed to apply to Plaintiff's complaint,[1] it is clear by his own admission that Plaintiff was on "inquiry notice" of his claims no later than 1998. Thus, Plaintiff's complaint should have been filed no later than 2002 (i.e., four years after Plaintiff was put on inquiry notice of his claims). It was filed in January 2008 – six years too late.

Plaintiff tries to salvage his time-barred claim by claiming that BAC "actively concealed" the fraudulent transaction. His own allegations tell a very different story. Plaintiff admits that BAC paid for the assignment with a check that was later cashed, and that BAC filed proof of the transaction with the FCC in 1996. The documents concerning the allegedly fraudulent transaction promptly were filed with the FCC (in strict accordance with the rules and regulations by which

---

[1] Plaintiff apparently tries to avoid the statute of limitations problem by fashioning his complaint as one for declaratory relief (as opposed to fraud, breach of contract, etc.). The result is the same, however. The nature of the right sued upon, and not the form of the action, determines the applicable statute of limitations. Thus, either the three-year statute for fraud or four-year statute for contract claims will apply to Plaintiff's causes of action for declaratory relief and accounting.

Plaintiff agreed to be bound when he accepted his valuable FCC license in 1992). The transaction was not concealed; it was clearly and intentionally placed in the federal public record for the world to see. This is not "active concealment."

Most important, though, is that Plaintiff admits that, as part of the "investigation" that he conducted beginning in 1998, he made "inquiries of the FCC." He does not explain whether he formally requested a copy of the FCC license file -- whether by simply requesting his own file as the licensee, or making a records request under the Freedom of Information Act, or otherwise. Rather, he merely states that "[d]espite these efforts, the plaintiff received no information regarding the existence of the purported assignment of the License to BACI" until 2006. As discussed below, this investigation and these allegations are insufficient to gain Plaintiff the protection of the discovery rule – simply put, a reasonably diligent investigation would have produced the publicly-available record of the assignment long before 2006, and Plaintiff has pleaded no facts showing otherwise.

## II.   STATEMENT OF FACTS

On January 14, 2008, Plaintiff filed a Complaint for Declaratory Relief and an Accounting in Santa Clara County Superior Court, styled *Bernard Love v. Bay Area Cablevision*, Case No. 108CV103157. On April 17, 2008, BAC removed the State Action to the United States District Court for the Northern District of California, based on federal question jurisdiction. On April 29, 2008, Plaintiff filed a Motion for Remand. The hearing on Plaintiff's Motion for Remand is set for September 8, 2008.

In the Complaint, Plaintiff alleges that, in December 1992, the FCC issued to Plaintiff a license for a multi-channel multipoint distribution service ("MMDS") operating on the H2 Channel, frequency 2265 MHz, call sign WNTM-579, serving the Los Gatos, California area ("License"). (Complaint, ¶ 4.) Plaintiff alleges that, on January 22, 1993, Plaintiff leased the License to Gulf American, Inc. ("1993 Lease"). (Complaint, ¶ 5.) Plaintiff further alleges that, on or about February 18, 1994, Gulf American, Inc., assigned the Lease to BAC ("1994 Assignment"). (Complaint, ¶ 6.) Plaintiff further alleges that he was not aware of the 1994 Assignment. (Complaint, ¶ 6.)

Plaintiff alleges that, in or about May 1996, BAC executed an Agreement for the Assignment of MMDS License, which assigned Plaintiff's interest in the License to BAC in exchange for payment of $60,000.00 ("1996 Assignment"). (Complaint, ¶ 7.) Plaintiff alleges that an unknown person forged his signature on the 1996 Assignment, and he did not receive $60,000.00. (Complaint, ¶ 8-9.) Plaintiff alleges that BAC paid the $60,000.00 to Kingswood Associates, Inc. ("Kingswood") the firm that originally assisted Plaintiff in marketing the License. (Complaint, ¶ 9.) Plaintiff further alleges that BAC and Kingswood intentionally concealed the 1996 Assignment, and that Plaintiff was not aware of the 1996 Assignment. (Complaint, ¶¶ 10, 12.) (Notably, Plaintiff makes no attempt to allege specifically how, or why, BAC intentionally concealed the assignment.)

Plaintiff alleges that BAC received the FCC's approval of the 1996 Assignment on or about July 31, 1998. (Complaint, ¶ 11.) Plaintiff further alleges that, pursuant to the FCC's July 31, 1998 approval of the 1996 Assignment, BAC is the current holder of the License. (Complaint, ¶ 13.)

Most important, Plaintiff alleges that, between 1998 and 2006, he attempted to ascertain "the status of the payments due" under the 1993 Lease and that he made "repeated attempts to contact Kingswood" and "inquiries of the FCC." (Complaint, ¶ 14.) Despite these attempts, Plaintiff claims that he "received no information regarding the existence of the purported assignment" (i.e., the 1996 Assignment). (Complaint, ¶ 14.) As mentioned earlier, Plaintiff does not mention whether, as part of the "investigation" that he conducted beginning in 1998, he formally requested a copy of the FCC license file -- whether by simply requesting his own file as the licensee, or making a records request under the Freedom of Information Act, or otherwise.

In early 2006, Plaintiff contacted the office of U.S. Representative Diana DeGette regarding the status of the License. (Complaint, ¶ 15.) Plaintiff further alleges that, in or about July 2006, he received documents related to the 1996 Assignment. (Complaint, ¶ 15.) Plaintiff further alleges that he had no knowledge of the 1996 Assignment until in or about July 2006. (Complaint, ¶ 16.) Again, Plaintiff offers no explanation as to why he was not able to obtain the assignment documents from the FCC earlier than 2006 – despite the fact that those documents

were contained in the publicly-available FCC file relating to the license that had been issued to him by the FCC.

### III. STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(B)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a plaintiff's allegations. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679, 688 (9th Cir. 2001). "The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

In ruling on a Rule 12(b)(6) motion, courts "generally assume the factual contentions to be true, . . . [The courts] do not however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008).

### IV. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

#### A. The Applicable Statute of Limitations Is Either Three Years or Four Years.

As mentioned earlier, apparently as another potential avenue to avoid the statute of limitations problem, Plaintiff has fashioned his complaint as one for declaratory relief (as opposed to fraud or breach of contract). The result is the same, however. "The nature of the right sued upon and not the form of the action, nor the relief demanded, determines the applicability of the statute of limitations." *Tostevin v. Douglas*, 160 Cal. App. 2d 321, 328 (1958) (holding that an action entitled "Complaint for Declaratory Judgment and for an Account" was really one to recover for breach of oral agreement, and the two-year limitations period applied). "The character of the action is to be determined not from the relief demanded but from the allegations of the

complaint" *Id.* (internal citations omitted). Thus, either the three-year statute for fraud[2] or four-year statute for contract claims will apply to Plaintiff's causes of action for declaratory relief and accounting. Cal. Code Civ. Proc. §§ 337-338.

**B.    The Limitation Period Began To Run No Later Than 1998.**

    1.    The Statute Of Limitation Begins To Run When A Reasonable Person Would Suspect A Factual Basis For The Cause Of Action.

California law firmly establishes that the limitation period begins to run when a plaintiff is put on notice of circumstances that would put a reasonable person on inquiry:

> [T]he plaintiff discovers the cause of action when he at least suspects a factual basis . . . for its elements . . . – when, simply put, he at least "suspects . . . that someone has done something wrong" to him . . . . He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. He has reason to suspect when he has "notice or information of circumstances to put a reasonable person *on inquiry*"; he need not

---

[2]    It is worth noting that, to the extent that Plaintiff's causes of action are deemed to be based in fraud, Plaintiff has failed to plead his claims with the requisite specificity to support such an action. Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Similarly, under California law, a cause of action for fraud requires the showing of representation, falsity, knowledge of falsity, intent to deceive, justifiable reliance and resulting damages. *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 72-73 (1990). In other words, to support a fraud claim in this action, Plaintiff must allege the following elements: (1) BAC must have made a representation as to a past or existing material fact; (2) the representation must have been untrue; (3) regardless of its actual belief, BAC must have made the representation without any reasonable ground for believing it to be true; (4) the representation must have been made with the intent to induce Plaintiff to rely upon it; (5) Plaintiff must have been unaware of the falsity of the representation; (6) Plaintiff must have acted in reliance upon the truth of the representation; (7) Plaintiff must have been justified in relying upon the representation; and (8) as a result of his reliance upon the truth of the representation, Plaintiff must have sustained damage. Plaintiff makes no such allegations. Rather, Plaintiff alleges simply that "someone" forged his name to the assignment sometime before 1996. The only allegation connecting BAC to the alleged "fraud" is that it "actively concealed" the assignment; not that it was involved in the alleged forgery, or made any sort of "representation" related thereto. Accordingly, the Complaint can not be deemed to state a fraud claim against BAC.

know the "specific 'facts' necessary to establish" the cause of action; rather, he may seek to learn such facts through the "process contemplated by pretrial discovery"; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place – he "cannot wait for" them "to find" him and "sit on" his "rights"; he "must go find" them himself if he can and "file suit" if he does. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999) (emphasis in original; internal citations omitted).

Plaintiff admits that BAC filed documents with the FCC in 1996 that detailed the allegedly fraudulent transfer. BAC's act of filing these documents with the FCC, in and of itself, should be sufficient to trigger the statute of limitations. "[W]hen the plaintiff has notice of information of circumstances to put a reasonable person on inquiry, ***or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books***), the statute commences to run." *See Pension Trust Fund v. McMorgan & Co.*, 2007 U.S. Dist. LEXIS 8946 (E.D. Cal. Jan. 23, 2007) (emphasis added) (internal citations omitted). Thus, Plaintiff was put on notice of his claims in 1996 when BAC filed the allegedly concealed documents with the FCC, such that the limitations period would have expired no later than 2000 (i.e., if the four-year limitation period for contract claims was deemed to apply).

        2.     <u>Plaintiff Was Put On Inquiry Notice When He Stopped Receiving Payments Under The 1993 Lease.</u>

Not only was Plaintiff on notice when BAC filed the assignment, but he also was put on inquiry notice when payments were stopped (i.e., after BAC paid for and took possession of the License, thereby terminating any further lease payment obligations). Plaintiff alleges that he leased the License to Gulf American in 1993. (Complaint, ¶ 5.) The 1993 Lease is attached as Exhibit 1 to the Complaint. The 1993 Lease states that Gulf American was to pay "Subscriber Fees" to Plaintiff on the twenty-fifth day of each month. (*See* Complaint, Ex. 1 at ¶ 5.) Plaintiff further alleges that Gulf American assigned the 1993 Lease to BAC by executing the 1994

1  Assignment. (Complaint, ¶ 6.) Plaintiff further alleges that BAC obtained Plaintiff's interest in
2  the License by means of the forged 1996 Assignment. (Complaint, ¶ 7.)
3       If BAC obtained the full rights to the License in 1996 then, beginning at that time, Plaintiff
4  would no longer have received monthly payments under the 1993 Lease. Thus, when Plaintiff
5  stopped receiving those monthly payments in 1996, he was on inquiry notice for purposes of the
6  running of the statute of limitation.
7       3.   <u>Plaintiff Was On Inquiry Notice No Later Than 1998, When He Admits
8            That He Began His Investigation Into Why He Had Stopped Receiving
9            Payments Under The 1993 Lease.</u>
10      As mentioned earlier, Plaintiff alleges that, starting in 1998, he "took measures to ascertain
11 the status of the payments due under the Channel Lease Agreement executed in January 1993."
12 (Complaint, ¶ 14.) Thus, Plaintiff admits that he was on inquiry notice of a potential claim no
13 later than 1998, **when he admits that he began his inquiry**. (Complaint, ¶ 14.) Plaintiff admits
14 specifically that his investigation regarding the monthly payments included contacting the FCC.
15 (Complaint, ¶ 14.) Plaintiff admits that the assignment documents were filed with the FCC in
16 1996 (and he obviously does not allege that the FCC was in on the alleged fraud or "intentional
17 concealment"). He offers no explanation whatsoever as to why he was unable to obtain the
18 assignment documents from the FCC – despite his admission that those documents were in the
19 FCC file relating to his license (i.e., the file eventually provided to him in 2006 by
20 Congresswoman DeGette).
21      As discussed earlier, the limitation period begins to run when a plaintiff has reason to
22 suspect a factual basis for his claim, not when he obtains the specific facts necessary to establish
23 the cause of action. *See Norgart*, 21 Cal. 4th at 397-98. More specifically, as mentioned earlier,
24 the limitation period begins to run when the plaintiff "***has the opportunity to obtain knowledge***
25 ***from sources open to his investigation (such as public records or corporation books).***" *Pension*
26 *Trust Fund v. McMorgan & Co.*, 2007 U.S. Dist. LEXIS 8946 (E.D. Cal. Jan. 23, 2007) (emphasis
27 added) (internal citations omitted). Plaintiff admits that he stopped receiving monthly payments
28 after the 1996 Assignment and took measures to ascertain the status of the payments. (Complaint,

1  ¶ 14.) Thus, he admits he was on inquiry notice – and, again, that *he actually commenced his*
2  *investigation – in 1998*. The documents showing the allegedly wrongful assignment were
3  available to him in the FCC records at that time. He does not claim otherwise. Thus, the
4  applicable statute of limitation began running no later than 1998, which means the limitation
5  period lapsed no later than 2002. Since Plaintiff did not file his Complaint until January 14, 2008,
6  his claims are time-barred.

7  V.    **CONCLUSION**

8       For the foregoing reasons, BAC respectfully requests that the Court grant its motion to
9  dismiss Plaintiff's Complaint in its entirety.

11 Dated: June 23, 2008            BRYAN CAVE LLP
                                    Gregory D. Trimarche
                                    Stephanie A. Blazewicz

13                                  By: _____
                                    Stephanie A. Blazewicz
14                                  Attorneys for Defendant
                                    BAY AREA CABLEVISION, INC.

BRYAN CAVE LLP
1900 MAIN STREET, SUITE 700
IRVINE, CALIFORNIA 92614-7328